IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| OTR WHEEL ENGINEERING, INC.,<br>BLACKSTONE/OTR, LLC , and F. B.<br>T. ENTERPRISES, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALLIANCE TIRE AMERICAS, INC.<br>FORMERLY KNOWN AS<br>ALLIANCE TIRE CO. (1992) USA<br>LTD.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE<br>NO. _____<br><br>**Demand for Jury Trial** |

## COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES FOR CONVERSION, MISAPPROPRIATION OF TRADE SECRETS, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITON, DECEPTIVE TRADE PRACTICES, AND UNJUST ENRICHMENT

OTR Wheel Engineering, Inc.,[1] Blackstone/OTR, LLC, and F. B. T.

Enterprises, Inc. (collectively, "OTR"), pursuant to 15 U.S.C. §§ 1114, 1116, 1117,

and 1125(a), 28 U.S.C. § 2201(a), and O.C.G.A. §§ 9-5-1, 9-5-10, 9-11-65, 10-1-

371 , 10-1-761, 23-2-55, and 44-12-150 to 44-12-153, file this Complaint against

---

[1] OTR Wheel Engineering, Inc. was formerly known as Wheel and Rim Supply,
Inc.

Alliance Tire Americas, Inc. ("Alliance" or "Defendant"),[2] and respectfully state as follows:

## INTRODUCTION

OTR brings this suit against Defendant for wrongful conversion of OTR's *Outrigger* tire design and molds (the "Molds") which Defendant took possession of following its purchase, or attempted purchase, of certain assets sold by GPX International Tire Corp. ("GPX") to Defendant in connection with GPX's Chapter 11 Bankruptcy proceedings. OTR is the lawful owner of the Molds, and therefore, OTR's *Outrigger* tire Molds were improperly included as assets of GPX in the asset purchase agreement between GPX and Defendant. OTR has notified Defendant of its ownership of the Molds and has demanded their return which the Defendant has refused to do. OTR brings this action (1) to recover possession of the molds; (2) to recover damages caused by Defendant's unlawful conversion of OTR's property, misappropriation of OTR's trade secrets, and infringement on OTR's trade dress; and (3) to enjoin Defendant from engaging in such unlawful and infringing conduct in the future.

---

[2] Defendant was formerly known as Alliance Tire Co. (1992) USA Ltd. On June 30, 2010, Alliance Tire Co. (1992) USA Ltd. filed an Amended Certificate of Authority changing its name to Alliance Tire Americas, Inc.

## PARTIES, JURISDICTION AND VENUE

1.

OTR Wheel Engineering, Inc. ("OTR Wheel") is a Georgia corporation that maintains its principal place of business at 6 Riverside Industrial Park, Rome, Georgia 30161.

2.

Blackstone/OTR, LLC ("Blackstone") is a Georgia limited liability company that maintains its principal place of business at 6 Riverside Industrial Park, Rome, Georgia 30161.

3.

F. B. T. Enterprises, Inc. ("F.B.T.") is a Georgia corporation that maintains its principal place of business at 6 Riverside Industrial Park, Rome, Georgia 30161.

4.

Alliance is a Delaware corporation authorized to transact business in Georgia. Alliance maintains its principal place of business at 201 Edgewater Drive, Suite 285, Wakefield, Massachusetts 01880. Defendant may be served with process by service on its Registered Agent, National Corporate Research, Ltd., at 3675 Crestwood Parkway, Suite 350, Duluth, Gwinnett County, Georgia 30096.

5.

This civil action arises under the Lanham Act of the United States, 15 U.S.C. § 1051 et seq. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. § 1121, and 17 U.S.C. § 101 et seq., as well as under the principles of pendent jurisdiction, 28 U.S.C. §§ 1338(b) and 1367. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of fees, interest and costs.

6.

Jurisdiction is proper as to Defendant because, inter alia, Defendant maintains a registered agent and is authorized to and does transact business in the State of Georgia.

7.

Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (c)(2) because, inter alia, Defendant has a registered agent and transacts business in this district.

## BACKGROUND FACTS

## THE AGREEMENTS FOR PRODUCTION AND USE OF THE MOLDS

8.

OTR manufactures and distributes wheels, tires, mounted tire/wheel assemblies, rubber tracks and cast products.  Since as early as 1998, OTR has sold tires manufactured in accordance with its proprietary *Outrigger* designs and specifications.

9.

In 2003, OTR contracted with Dynamic Tire Corp. ("Dynamic"), orally and in writing, for Dynamic to build, solely for OTR, tire molds according to OTR's *Outrigger* designs.

10.

The contract between OTR and Dynamic provided that the Molds built by Dynamic and the *Outrigger* designs would be exclusively owned by OTR and would be used exclusively for the manufacture of OTR tires.

11.

The *Outrigger* designs and the Molds contain a bar angle, tire size, and tire tread design that are distinct from any other similar-use tire in the industry.

12.

In January 2003, Dynamic executed a Confidentiality and Non-Solicitation Agreement (the "2003 Confidentiality Agreement") in which it agreed that the Molds and design specifications were part of the trade secrets and confidential information owned and protected by OTR (formerly known as Wheel and Rim Supply, Inc.). By entry into this 2003 Confidentiality Agreement, Dynamic assumed various obligations, including the obligation to return such trade secrets and confidential information to OTR at the termination of their business relationship.

13.

A true and correct copy of the 2003 Confidentiality Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference.

14.

In 2004, OTR asked Dynamic to make *Outrigger* tires for OTR from the Molds. OTR received the first *Outrigger* tire made from the Molds on March 26, 2004. At that time, OTR provided Dynamic with the proprietary OTR identification number to be stamped on the Molds and the proprietary OTR serial numbers to be stamped onto each tire made from the Molds.

15.

OTR and Dynamic reached additional agreements for the manufacture of tires and the construction of additional *Outrigger* Molds, including a contract executed on or about July 13, 2004 (the "2004 Letter Agreement"), all with the explicit mutual understanding that the Molds belonged to OTR as part of its trade secrets and confidential information, even though the Molds were in Dynamic's possession.

16.

A true and correct copy of the 2004 Letter Agreement between OTR and Dynamic is attached hereto as **Exhibit B** and incorporated herein by reference.

17.

Upon information and belief, on or about September 2005, GPX International Tire Corporation ("GPX") was formed through a corporate merger or other transaction between Dynamic and Galaxy Tire and Wheel, Inc., as a result of which Dynamic became a subsidiary of GPX.  (Dynamic and GPX are collectively referred to as "Dynamic/GPX".)

18.

On or about March 10, 2006, GPX executed a Confidentiality and Non-Solicitation Agreement (the "2006 Confidentiality Agreement") in which it agreed

that the tire Molds were part of the trade secrets and confidential information owned and protected by OTR and that GPX had obligations to return such trade secrets and confidential information to OTR at the termination of their business relationship.

19.

A true and correct copy of the 2006 Confidentiality Agreement is attached hereto as **Exhibit C** and is incorporated herein by reference.

**OTR'S OWNERSHIP OF THE MOLDS UNDER GEORGIA LAW**

20.

Under Georgia law, OTR was the owner of the Molds throughout the business relationship between OTR and Dynamic/GPX.

21.

The 2003 Confidentiality Agreement, the 2004 Letter Agreement and the 2006 Confidentiality Agreement between OTR and Dynamic/GPX all expressly identify OTR as the owner of the Molds.

22.

OTR paid Dynamic/GPX all amounts due for the construction of the molds.

23.

O.C.G.A. § 44-12-311 provides that "the customer [here, OTR] shall have all rights and title to any die, mold, form, or pattern in the possession of the molder [here, Dynamic/GPX]." Before ownership can be transferred from the customer, certain specific steps must be taken by the molder in the absence of an agreement by the customer to sell the molds. Included in these steps is written notice by registered mail to the owner of the molds. O.C.G.A. § 44-12-311(c).

24.

Neither GPX or Dynamic sent written notice to OTR to terminate OTR's right and title to the Molds. In fact, they made no attempt to affect a change in ownership of the molds by operation of law.

25.

OTR remains the rightful owner of the Molds under Georgia law.

**THE SALE OF GPX ASSETS TO DEFENDANT IN BANKRUPTCY**

26.

On October 26, 2009, GPX filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

27.

On December 11, 2009, the Bankruptcy Court authorized GPX to sell assets related to its off-highway tire business and truck tire business to Defendant (then known as Alliance Tire Co. (1992) USA Ltd.) under an asset purchase agreement dated October 26, 2009 (the "Asset Purchase Agreement").

28.

True and correct copies of the Asset Purchase Agreement and the December 11, 2009 Order of the Bankruptcy Court authorizing the implementation of the Asset Purchase Agreement are attached hereto as composite **Exhibit D** and are incorporated herein by reference.

29.

Although the Molds were not owned by GPX, the Asset Purchase Agreement improperly included the Molds in its list of Purchased Assets acquired by Defendant.

30.

In or around December 2010, Defendant improperly took possession of the Molds by picking them up from GPX's Hubei Star Bright Tire Co. tire factory.

## OTR'S DEMAND FOR THE RETURN OF THE MOLDS

### 31.

OTR sent two letters to Defendant dated, February 4, 2011, and February 23, 2011, respectively, informing Defendant that OTR was the owner of the Molds and demanding their return. (the "February 2011 Letters").

### 32.

True and correct copies of the February 2011 Letters from OTR to Defendant are attached hereto as composite **Exhibit E** and are incorporated herein by reference.

### 33.

In addition, OTR representatives have had numerous other contacts via telephone and email with representatives for Defendant demanding the return of the Molds.

### 34.

In May 2012, Fred Taylor, President of OTR, traveled from Rome, Georgia to India to meet with Yogesh Kumar, a representative of Defendant.  In that meeting Mr. Taylor again informed Defendant that OTR owned the Molds and demanded their return.  Defendant again refused to return the Molds.

35.

Despite these numerous requests and meetings, Defendant has continued to refuse to return the Molds to OTR up to the filing of this Complaint.

36.

As a result of Defendant's wrongful possession and control of the Molds, OTR was forced to contract and pay for the construction of replacement Molds.

37.

Upon information and belief, Defendant continues wrongfully and knowingly to use the Molds to produce tires using OTR's unique and proprietary *Outrigger* designs.

## OTR'S TRADE DRESS REGISTRATION

38.

OTR, at substantial expense and effort, created, designed and authored a distinctive trade dress for the tire tread of its *Outrigger* designs and tires (the "Trade Dress"). The subject Trade Dress consists of an off-road tire tread design having alternating interlaced lug bars. The lug bars are formed from the sidewalls of the tire to the center bar of the tire at an angle from the tire sidewall, the angle being between 35 and 45 degrees, and terminate towards the center bar of the tire with a lug bar section that is substantially perpendicular to the sidewall of the tire (as

depicted below).



39.

OTR'S Trade Dress is arbitrary, unique and non-functional.  The only

function of the Trade Dress is to identify the source of the product as OTR and its

*Outrigger* design.  The Trade Dress is inherently distinctive due to its lug bars that

are angled within a specific range and that terminate towards the center bar of the

tire with a lug bar section that is substantially perpendicular to the sidewall of the

tire.  Other major manufacturers of tires employ a tire tread trade dress which, taken

as a whole, is substantially different from OTR's Trade Dress.

40.

There exist other tire tread designs, including in particular, alternative off-

road tire designs having directional self-cleaning tread.

41.

Since as early as 1998, OTR has continuously and extensively used its distinctive Trade Dress throughout the United States in interstate commerce. OTR has sold millions of dollars of its *Outrigger* tires bearing its distinctive Trade Dress and has expended thousands of dollars in advertising and promotion featuring the Trade Dress. The subject Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade. As a result, OTR has developed and acquired valuable goodwill from its Trade Dress, including the ability of the tread design to identify OTR as the source of high quality tires.

42.

OTR's Trade Dress has acquired distinctiveness and secondary meaning by reason of OTR's extensive advertising, promotion and sale of *Outrigger* tires bearing the Trade Dress.

43.

On January 3, 2011, F. B. T.[3] submitted a federal trade dress application with the United States Patent and Trademark Office to register its Trade Dress (Application Serial No. 85209230).

---

[3] F.B.T., OTR Wheel, and Blackstone are related entities, each having an interest in the production and/or sale of the *Outrigger* tire and each sharing common ownership and management.

44.

On October 9, 2012, the application was approved and OTR's Trade Dress was registered (Registration No. 4,220,169).

45.

A true and correct copy of the Registration Certificate for the Trade Dress is attached hereto as **Exhibit F**.

## DEFENDANT'S INFRINGING CONDUCT

46.

Notwithstanding OTR's well established rights in and use of said Trade Dress, and after OTR's Trade Dress had acquired distinctiveness among the consuming public and trade, the Defendant adopted and used in interstate commerce a tire tread design for its tire products which is substantially and confusingly similar to OTR's *Outrigger* design and Trade Dress.

47.

Upon information and belief, at least as early as March 2012, Defendant manufactured or contracted for the manufacturing of tires containing a tire tread design substantially similar to or the same as OTR's Trade Dress.

48.

Upon information and belief, Defendant intentionally and with full knowledge used OTR's Trade Dress in the manufacture of Defendant's tires.  In fact, upon information and belief, Defendant used and is continuing to use the Molds to manufacture tires containing the Trade Dress tread and is selling or attempting to sell these tires to the consuming public and trade in competition with OTR.

49.

Defendant's tire tread trade dress is substantially and confusingly similar to OTR's Trade Dress.

50.

Defendant's use of OTR's Trade Dress is likely to cause confusion, mistake and deception among the relevant consuming public and trade.  Consumers will likely believe that Defendant's tires are in some way associated or connected with or approved by OTR, or that Defendant's products otherwise originate from the same source as do OTR's *Outrigger* tires.

51.

Defendant's use of the Molds to manufacture tires containing the Trade Dress constitutes a deliberate, intentional attempt to trade and capitalize on the substantial goodwill of OTR's Trade Dress.

52.

OTR has already been forced to lower tire prices for one customer as a result of Defendant's use of OTR's Trade Dress in unlawful competition with OTR. OTR has suffered and will continue to suffer a substantial loss in revenue because of Defendant's infringing conduct.

## COUNT I
## DECLARATORY JUDGMENT

53.

OTR incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

54.

Both by agreement and under O.C.G.A. § 44-12-311, OTR is the rightful owner of the Molds.

55.

Neither Dynamic nor GPX ever took the steps set forth in O.C.G.A. § 44-12-311 *et seq.* required to assume or establish ownership of the Molds; therefore, neither Dynamic nor GPX has ever been the owner of the Molds.

56.

An appropriate manner for resolving the issue of the ownership of the Molds is a Petition for Declaratory Judgment. In the instant case there is an actual

controversy between the parties as to the ownership and right to possession of the Molds.  OTR is entitled to a declaratory judgment stating that OTR is the rightful owner of the Molds and has title and all rights to the Molds, including possession of the Molds.

57.

Pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, OTR prays that this Court set down a hearing as soon as practicable for the purpose of determining whether the Molds are property exclusively owned by OTR.

<strong><u>COUNT II</u></strong><br><strong><u>CONVERSION</u></strong>

58.

OTR incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

59.

OTR is the rightful owner of the Molds, which were made in accordance with OTR's unique and proprietary *Outrigger* design and constitute proprietary trade secrets and confidential information.

60.

Defendant has possession of the Molds.

18

61.

OTR has notified Defendant that it is the rightful owner of the Molds, and OTR has demanded that Defendant return the Molds to OTR.

62.

Despite receiving notice that OTR is the rightful owner of the Molds, Defendant has refused to return the Molds to OTR.

63.

OTR is entitled to judgment against Defendant for conversion of the Molds. As a remedy for conversion, OTR is entitled to the return of the Molds, or to damages in the amount of the Molds' value, OTR's lost revenue, and other amounts to be proven at trial.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
### (O.C.G.A. § 10-1-760 et seq.)

64.

OTR incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

65.

The *Outrigger* design specifications and the engineering processes used to construct the Molds as well as the Molds themselves are OTR's trade secrets, as defined under Georgia law.

66.

OTR's *Outrigger* designs, and the Molds themselves, are not commonly known by or available to the public.

67.

OTR derives economic value from the *Outrigger* designs and the Molds not being generally known to or readily ascertainable by proper means to others who could derive economic benefit from the *Outrigger* designs and the Molds.

68.

OTR has employed reasonable efforts to maintain the secrecy of the *Outrigger* designs and the Molds through various confidentiality agreements and other methods.

69.

Defendant has acquired the Molds, and upon information and belief, has used and is continuing to use the Molds without OTR's consent.

70.

Defendant has been notified by OTR that GPX, from whom Defendant acquired the Molds, had a contractual duty to maintain the secrecy of the Molds and the *Outrigger* designs and to limit their use.

71.

Defendant has been notified by OTR that GPX's possession of the Molds gave rise to a duty to maintain the secrecy of the Molds and the *Outrigger* designs and to limit their use under Georgia law.

72.

Defendant has been notified by OTR that the Molds and the *Outrigger* designs are trade secrets and that Defendant has acquired them by accident or mistake, because GPX did not own the Molds when it improperly included them in the Asset Purchase Agreement.

73.

Defendants' continued use of OTR's trade secrets constitutes willful and malicious misappropriation.

74.

OTR is entitled to recover damages, including without limitation exemplary damages, for the misappropriation of OTR's trade secrets.  O.C.G.A. § 10-1-763.

75.

OTR is further entitled to an injunction prohibiting further use of OTR's

trade secrets.  O.C.G.A. § 10-1-762.

## COUNT IV
## FEDERAL TRADE DRESS INFRINGEMENT
## (15 U.S.C. §§ 1114 and 1125(a))

76.

OTR incorporates and realleges, as if fully set forth herein, the allegations

contained in the foregoing paragraphs of this Complaint.

77.

OTR created, designed and authored the distinctive Trade Dress for the tire

tread of its *Outrigger* designs and tires.  The Trade Dress is a federally registered

mark.   F. B. T. owns the U.S. Trademark Registration for the Trade Dress,

Registration No. 4,220,169, issued by the United States Patent and Trademark

Office on October 9, 2012.

78.

OTR'S Trade Dress is arbitrary, unique and non-functional and is inherently

distinctive due to its lug bars that are angled within a specific range (namely, 35 to

45 degrees from the tire's sidewall to the center bar) and that terminate towards the

center bar of the tire with a lug bar section that is substantially perpendicular to the sidewall of the tire.

79.

There exist a number of options available to competitors in the design of tire treads, including in particular, alternative off-road tire designs having directional self-cleaning tread.

80.

Defendant's manufacture, distribution, and/or sale of tires bearing the Trade Dress tread or bearing a tire tread which closely simulates OTR's Trade Dress, constitutes a false designation of origin which is causing or is likely to cause confusion, mistake or deception as to origin, sponsorship or approval of Defendant's products, in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

81.

Defendant's complained-of acts have damaged OTR and unless restrained will continue to damage OTR, including lost profits and irreparable injury to OTR's reputation and goodwill. OTR has no adequate remedy at law.

82.

Defendant's actions, particularly its use of the Molds to manufacture, distribute, and/or sell tires containing OTR's Trade Dress, demonstrate an

intentional, willful, malicious, and bad faith intent to trade on the goodwill associated with OTR to the irreparable injury to OTR.

83.

Defendant's conduct is causing and is likely to cause substantial injury to the public and to OTR, and OTR is entitled to injunctive relief and to recover Defendant's profits, three times OTR's actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114,1116(a), 1117(a), and 1125(a).

## COUNT V
## GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (O.C.G.A. § 10-1-371 et seq.)

84.

OTR incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

85.

Defendant has engaged in unfair trade practices within the meaning of the Georgia Unfair Trade Practices Act, O.C.G.A. § 10-1-371 et seq., by:

a.   Passing off its tires as those of OTR or approved by OTR;

b.   Causing a likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective products;

    c.      Causing a likelihood of confusion or misunderstanding as to the affiliation, connection or association of Defendant with OTR;

    d.      Engaging in other conduct that similarly creates a likelihood of confusion or of misunderstanding among the consuming public and trade.

86.

Defendant's unlawful conduct relating to OTR's *Outrigger* Molds, designs, and Trade Dress is causing and is likely to cause substantial injury to the purchasing public and trade and to OTR, was conducted in trade and commerce, and has the potential for repetition.

87.

Defendant's unlawful conduct has irreparably damaged OTR and will continue to damage OTR unless restrained by this Court. OTR is without an adequate remedy at law. Pursuant to O.C.G.A. § 10-1-373(a), OTR is entitled to, among other things, an order temporarily and permanently enjoining and restraining Defendant from advertising, manufacturing, and/or selling infringing products.

88.

Defendant's unlawful conduct has proximately caused OTR to suffer

damages, and OTR is entitled to recover its actual damages, costs, and reasonable

attorneys' fees pursuant to O.C.G.A. § 10-1-373.

### COUNT VI
### UNFAIR COMPETITION
### (O.C.G.A. § 23-2-55 AND GEORGIA COMMON LAW)

89.

OTR incorporates and realleges, as if fully set forth herein, the allegations

contained in the foregoing paragraphs of this Complaint.

90.

Defendant's conduct was done with the intent to deceive or mislead the

consuming public and trade, and with full knowledge of OTR's *Outrigger* tread

design and tire products.

91.

By the acts described herein, Defendant has engaged in unfair competition in

violation of O.C.G.A. § 23-2-55 and of OTR's rights under the common law of

Georgia.

92.

Defendant's conduct has greatly and irreparably damaged OTR and will continue to do so unless restrained by this Court. OTR is without an adequate remedy at law and thus is entitled to, among other things, an order temporarily and permanently enjoining and restraining Defendant from advertising, manufacturing, distributing, and/or selling the infringing tires, and any other damages as permitted by law.

## COUNT VII
## UNJUST ENRICHMENT

93.

OTR incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

94.

Upon information and belief, Defendant has received benefits from its use of OTR's proprietary and unique *Outrigger* Molds.

95.

The benefits of the Molds must be returned to OTR, or OTR ought to be compensated for the benefits conferred on Defendant.

96.

It is against equity for Defendant to retain the benefits of the Molds and to profit by their use without compensating OTR.

97.

OTR is entitled to damages in an amount to be proven at trial to prevent Defendant from being unjustly enriched.

## COUNT VIII
## PRELIMINARY INJUNCTION

98.

OTR incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

99.

Despite OTR's demand for the return of the Molds and the cessation of Defendant's use of the Molds to manufacture tires, Defendant continues to possess and use the Molds in violation of OTR's ownership and trade secret and trade dress rights.

100.

Because OTR is the rightful owner of the Molds and any tires made from the Molds, there is a substantial likelihood that OTR will prevail on the merits of its claims.

101.

Defendant's current and continuing use of the Molds to produce tires from OTR's *Outrigger* designs is an immediate and irreparable injury to OTR, its trade secrets, and its business reputation and goodwill.

102.

As described more fully in the Motion for Preliminary Injunction filed contemporaneously with this Complaint, OTR is entitled to an preliminary injunction enjoining Defendant from producing tires from, or otherwise utilizing, the Molds.

103.

Defendant's acts in continuing to use the Molds and retaining possession of the Molds after notice of OTR's ownership is contrary to equity and good conscience.

104.

OTR has no adequate remedy at law during the pendency of this case for the violation of its trade secrets and improper use of its proprietary and unique *Outrigger* design.

105.

The harm to OTR outweighs any potential harm a preliminary injunction would do to Defendant.

106.

The public interest in enforcing contractual obligations and trade secrets and preventing consumer confusion caused by Defendant's use of the Molds favors enjoining Defendant from producing tires using OTR's Molds during the pendency of this case.

107.

OTR is entitled to a preliminary injunction requiring Defendant to cease using the Molds during this case to prevent further violations of OTR's ownership of and rights in the Molds.

## COUNT IX
## PERMANENT INJUNCTION

### 108.

OTR incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

### 109.

For the reasons stated in Count I, above, OTR is entitled, after a hearing and upon final decree, to a permanent injunction requiring Defendant to return the Molds to OTR and refrain from making any further use of the Molds and designs to manufacture tires in competition with OTR or for any other purpose.

## COUNT IX
## PUNITIVE DAMAGES

### 110.

OTR incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

111.

Defendant's continued use of the Molds to manufacture, distribute, and/or sell tires containing OTR's Trade Dress with knowledge of OTR's ownership interest in the Molds and after receiving a demand from OTR for return of the Molds, demonstrates an intentional, willful, malicious, and bad faith intent to trade on the goodwill associated with OTR.

112.

Defendant's actions show willful misconduct, malice, wantonness, or that entire want of care which raises the presumption of conscious indifference to the consequences to OTR.

113.

In addition to full compensatory damages and all other relief sought herein, OTR is entitled to an award of punitive damages against Defendant in an amount to be determined by the enlightened conscience of the jury sufficient to deter Defendant from engaging in such conduct in the future.

**WHEREFORE**, OTR prays that the Court:

A.     Provide OTR a trial by jury;

B.     Grant OTR a preliminary injunction enjoining Defendant from using the Molds and/or *Outrigger* designs to manufacture tires, or to copy or record proprietary information about the Molds or *Outrigger* designs;

C.     Grant OTR a permanent injunction requiring Defendant to return the Molds and all information about the Molds and designs and to cease manufacturing tires from the Molds or any likeness of the Molds;

D.     Grant OTR a declaratory judgment setting forth OTR's rightful ownership in and right to possession of the Molds;

E.     Grant preliminary and permanent injunction enjoining Defendant and its officers, agents, servants, employees, attorneys and those persons, firms or corporations, acting in concert and participation with them from any importation, manufacture, assembly, advertisement, promotion, offer for sale, sale, purchase, distribution, movement or transfer of, or any other involvement with tire products bearing OTR's Trade Dress, or any other colorable imitation of OTR's distinctive Trade Dress on or in connection with tire products;

F.     Enter judgment in favor of OTR and against Defendant for lost profits

and lost revenues;

G.     Award OTR the return of the Molds, or in the alternative, the Molds' fair value and the cost of building replacement molds;

H.     Award OTR an amount equal to the hire value of the Molds for the time Defendant improperly retained them;

I.     Award OTR damages, including exemplary and treble damages, in such other amounts as may be proven at trial;

J.     Award OTR punitive damages in an amount sufficient to deter Defendant from engaging in such conduct in the future;

K.     Award OTR post-judgment interest;

L.     For trial by jury; and

M.     Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 21st day of November, 2012.

WOMBLE CARLYLE SANDRIDGE & RICE
*A Limited Liability Partnership*

By:

Michael J. Sullivan
State Bar No. 142203
Julie E. Adkins
State Bar No. 871742
271 17th Street N.W., Suite 2400
Atlanta, GA 30363
Phone: (404) 872-7000
msullivan@wcsr.com
jadkins@wcsr.com

*Attorneys for Plaintiffs OTR Wheel*
*Engineering, Inc., Blackstone/OTR, LLC,*
*and F. B. T. Enterprises, Inc.*

35